UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION


L.D.N. (XXX-XX-4228)                    CIVIL ACTION NO. 10-cv-1745

VERSUS                                  JUDGE HICKS

MICHAEL J. ASTRUE a/k/a                 MAGISTRATE JUDGE HORNSBY
U.S. COMMISSIONER SOCIAL
SECURITY ADMINISTRATION


**REPORT AND RECOMMENDATION**

**Introduction**

L.D.N. ("Plaintiff") was born in 1962, has a high school education plus two years of

college, and past relevant work as an assembly line worker, gate guard, construction laborer,

and trash pick-up person.  Plaintiff applied for disability benefits. He alleged the onset of

disability in December 2001, based on mental or psychological limitations.  ALJ W. Thomas

Bundy conducted a hearing and issued a written decision that denied the claim.  Tr. 15-23.

The Appeals Council denied a request for review (Tr. 1-3), making the Commissioner's

decision final.

Plaintiff appealed to this court pursuant to 42 U.S.C. § 405(g).  He argues that the

residual functional capacity ("RFC") assessed by the ALJ is not supported by substantial

evidence.  He contends that the reports of three examiners are either inconsistent with each

other or with the ALJ's RFC.  For the reasons that follow, it is recommended that the

Commissioner's decision be reversed and remanded.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance.  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Analysis**

The ALJ analyzed Plaintiff's claim under the five-step sequential analysis established in the regulations. It requires the ALJ to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.  The claimant bears the burden of showing he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there are jobs that exist in significant numbers that the claimant can perform. If, at any step, the claimant is determined to be disabled or not disabled, the inquiry ends. See Audler v. Astrue, 501 F.3d 446, 447-48 (5th Cir. 2007).

The ALJ found that Plaintiff was not working and that he has the following severe impairments: dysthymia, anxiety disorder, and substance addiction disorder. He next found that the impairments did not meet or equal a listed impairment, which Plaintiff does not challenge.

Before going from step three to step four, the ALJ assesses the claimant's RFC by determining the most the claimant can still do despite his limitations. 20 C.F.R. §§ 404.1520(a)(4) and 404.1545(a)(1). The claimant's RFC is then used at steps four and five to determine if the claimant can still do his past relevant work or adjust to other jobs that exist in the national economy. 20 C.F.R. § 404.1520(e).

The ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations: he is able to understand, remember, and carry out simple routine tasks; and he has moderate limitations in the ability to interact with others, but he can maintain a superficial level of contact with the public, supervisors, and co-workers that is consistent with work requiring the performance of simple routine tasks. Tr. 19.

A vocational expert ("VE") testified at the hearing that a person with the RFC found by an Agency consultant, which was at least as restrictive as found by the ALJ, could still perform unskilled work such as Plaintiff's past jobs. Plaintiff's counsel argued that one of the consulting examiners, Dr. Staats, had found that Plaintiff's social interaction and persistence were "poor." See Tr. 245. Counsel pointed to information he obtained from Dr. Staats in another case in which Staats correlated the adjectives he uses to describe the extent

of a limitation to the terms found in the regulations.  Relevant here, he said that marginal-to-poor in his terminology equals a moderate limitation under the regulations.  And when he describes a condition as poor, it is equivalent to "marked to extreme" under the regulations.  Tr. 532.  The VE said that if Plaintiff had marked limitations in two areas of social interaction, such as interaction with the public or interaction with co-workers and supervisors, it would eliminate all jobs.  Tr. 44.

The ALJ, in his written decision, discussed various evidence relevant to RFC.  He noted that Plaintiff's activities of daily living showed, contrary to Plaintiff's claims, an ability to interact adequately with others on a simple basis.  For example, he attends daily half-way house meetings with other veterans, attends AA and NA meetings on a regular basis, and reports to a "chore master," who Plaintiff is able to communicate with for the purpose of accepting instructions and feedback regarding his performance of household chores.  The chores include simple, routine tasks such as washing dishes, sweeping, and mopping.  Plaintiff does not have to be reminded to tend to his personal care or take medications, and he is able to travel and shop for himself in stores.  Tr. 19-20.

The ALJ also looked to treating source information, which he found supported his RFC.  He pointed to evidence that Plaintiff participated appropriately at stress management group meetings, was attentive when others spoke and actively participated, and was able to understand test-taking directions.  Plaintiff was noted to have poor eye contact.  Despite his statements that he was angry and unhappy, he was noted at least at times as being calm and somewhat cooperative.  Tr. 21-22.  There is nothing in the ALJ's lengthy discussion of those

records to suggest limitations greater than the RFC, and Plaintiff has pointed to no such entries.

Dr. Barbara Felkins, board certified in general psychiatry, did not examine Plaintiff but did review his medical records.  She discussed his treatment history at the VA and noted that she has reviewed many VA files and knows they can and do respond more vigorously to serious cases.  She found that Plaintiff did have some low level paranoia, more like social phobia, and would need simple work in which contact with the public and co-workers would be incidental to the work.  She found that Plaintiff had marked limitations in the ability to understand and carry out complex instructions or make judgments on complex work decisions, but he had no limitation in the ability to understand, remember, and carry out simple instructions.  Tr. 534-44.

Dr. Felkins was asked if there were any conflicts in the medical evidence and how she resolved them.  She noted that Dr. Staats used vague terms in his assessment but, as clarified by his letter to counsel for Plaintiff, his report suggested a belief that Plaintiff was disabled. Dr. Felkins explained the conflict between her findings and those of Dr. Staats by noting that at the time of the Staats examination Plaintiff had been sober only four months, and he was on no psychiatric medication, but he was working at the VA in incentive training and then compensated work therapy.  Tr. 536.

Tom Ray, Ph.D., a state agency consultant, completed an assessment form based largely on his review of Dr. Staats' report.  He found that Plaintiff was not significantly limited in most areas, with only moderate limitations in the ability to maintain attention and

concentration for extended periods, work in coordination with others without being distracted, and interact appropriately with the general public.  Tr. 248-50. There is no indication that Ray was aware of the explanatory letter from Dr. Staats regarding his terminology.

The ALJ discussed the reports from Dr. Felkins and Dr. Ray to support his RFC finding.  He then added that, likewise, Dr. Staats concluded that Plaintiff's concentration and thinking were adequate, and his understanding and memory were intact.  Tr. 20.  The ALJ then said that he assigned great weight to the conclusions reached by Drs. Felkins, Ray, *and Staats* because "their conclusions are internally consistent, consistent with each other, and amply supported by the treating source data in the record, "and further reinforced by Dr. Staats' consultative examination findings."  Tr. 20-21.  It appears that the first reference to Dr. Staats may have been a drafting error, as it is the Felkins and Ray reports that are consistent with each other, "further reinforced by" Dr. Staats' findings.  But that is only a guess based on the structure of the paragraph, and the court must take the decision as it finds it.

An ALJ may properly rely on a non-examining source's assessment when those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining source.  Carrier v. Sullivan, 944 F.2d 243, 246 (5th Cir. 1991).  The ALJ could perhaps have justified reliance upon the opinions from Dr. Felkins and Dr. Ray, but there was no discussion of why such reliance was permitted or warranted.  Rather, the ALJ operated as if those two decisions were consistent with the opinion from examining

source Dr. Staats.  Matters are further complicated because Dr. Ray relied on Dr. Staats' report, but he apparently did so without the proper interpretative key to divine that Dr. Staats' terminology intended a much greater degree of limitation than the average person might believe was suggested by his language.

This rather unfortunate situation, caused largely by Dr. Staats' decision to use language not employed in the Agency's regulations, manuals, and forms, has happened before.  Reversal and remand was ordered in a very similar situation in <u>Thompson v. Astrue</u>, 2009 WL 2222529 (W.D. La. 2009) (M.J. Hayes; J. Stagg), <u>Alexander v. Astrue</u>, 2008 WL 918527 (W.D. La. 2008) (M.J. Hayes), and <u>C.A.S. v. Commissioner</u>, 2011 WL 3568289 (W.D. La. 2011) (M.J. Hornsby; J. Hicks).  Some denials have been affirmed despite the impact of the Staats facsimile because there was competing firsthand evidence from examining physicians on which the ALJ relied.  <u>MLM v. Astrue</u>, 2009 WL 3156542 (W.D. La. 2009) (M.J. Hornsby) and <u>Bell v. Commissioner</u>, 2009 WL 5125418 (W.D. La. 2009) (M.J. Hornsby).

Dr. Staats' report of his examination perhaps does not indicate limitations so severe as suggested by his language key, but the conclusions are nonetheless there and have not been explained away by the ALJ.  Dr. Ray's report is questionable because of its reliance on Dr. Staats' findings and the likelihood that Dr. Ray did not understand Dr. Staats' unique language in describing limitations.  The ALJ was apparently aware of Dr. Staats' language key, but he did not address in his written decision the issues it created.  There is some evidence in the record from examining sources at the VA, but they are more in the nature of

behavioral reports than specific descriptions of limitations as found in the Staats, Ray, and Felkins reports.

The confusion caused by Dr. Staats' terminology, together with the absence of an explained discounting of the examining source's assessment in the ALJ's written decision, requires reversal and remand.  As this court has mentioned in a number of rulings and recommendations, if the Agency has not already done so, it is asked to instruct Dr. Staats to please employ language contemplated by the Agency's regulations and procedures rather than terms of his own creation whose meanings are not clear to those who must rely on his reports.  The use of the correct language could save many hours and resources needlessly expended by the Agency, the courts, and counsel for the claimants in these cases. If the Agency is unwilling or unable to do so, its written decisions should squarely address the Staats findings and the weight afforded them.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be reversed pursuant to the fourth sentence of 42 U.S.C. § 405(g), and that this case be remanded for further proceedings consistent with the court's decision.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 14th day of February, 2012.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE